UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Daniel B. Young, | : | Case No. 1:09CV2471 |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Galion, LLC, | : | **MEMORANDUM OPINION** |
| | : | |
| Defendant | : | |

Currently pending is the motion of defendant Galion, LLC ("Galion") seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The plaintiff, Mr. Daniel B. Young, initiated this action alleging that his employer discriminated against him based on his age consequent to his termination from employment,[1] in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as well as the state law equivalent, Ohio Revised Code Section 4112.14.

The plaintiff began his employment with Galion[2] in 1979, when he began work as a Screw Machine Operator. With the exception of a three month break in service in 1986, he performed that same job at Galion until he was terminated on June 20, 2007.

Plaintiff's supervisor, Mr. Gene Fruth, testified upon deposition that prior to May of 2007

---

[1] The plaintiff, who was born on December 6, 1952, was 55 years of age when he was terminated.

[2] Galion is a ballistics manufacturer which serves as a supplier to the United States government.

1

the plaintiff had not been disciplined by him.[3]  However, his employment file reveals that on March 23, 2007 the plaintiff received a "Written Counseling–Attendance" for having failed to either show up for work or to call in on the prior day.  He was tardy for work on March 26, 2007, after which he received a three-day suspension, with a warning that any further violation could result in termination from employment.  Plaintiff received no further discipline for attendance issues.

However, on May 9, 2007, the plaintiff met with Mr. Fruth and Ms. Kristina Case, Galion's Human Resource Manager, to discuss a "quality problem,"[4] summarized by Ms. Case as follows:

> Tool broke producing the 505 and you neglected to screen all the parts out.  You are eligible to be terminated.  However, in light of your seniority we are not terminating you for this incident.  You will be placed on probation, receiving the rights of a probationary employee. After six months of probation, your performance will be reviewed. Like all probationary employees, you will not receive the 3% increase until the probation has been lifted.

The plaintiff admits in his brief in opposition to summary judgment that "Galion may terminate employment at any time if quality and quantity of work do not meet company standards."

Another meeting was held on June 20, 2007 to discuss another quality issue related to plaintiff's work.  The attendees were Mr. Carl Heidrich, Ms. Cheri Coy, Mr. Rich Van Buren and Ms. Case.  Once again, Ms. Case summarized the meeting as follows:

> There are three skids of parts that need to be screened (totaling around 17K parts).  These parts were produced by Dan Young and

---

[3]There is evidence in the record of a progressive discipline policy for attendance infractions, being a verbal warning, a written warning, a 3-day suspension, and termination.  There is no evidence of a similar progressive discipline policy for non-attendance infractions.

[4]The Galion employee handbook includes the following provision which informs an employee of the possibility of termination for failure to meet quality standards: "Employment may be terminated at any time if quality and quantity does not meet company standards."

> Frank Diebert. The parts must be in a 248-250 range. The parts are out of range on the high side.
>
> A gage is used to check the size of these parts. Both operators are not checking the parts with a gage regularly and/or not checking their gage with a set check. (Set check verifies that the gage is accurate).
>
> Inspection records maintained by quality showed both operators were found to be running parts with high tolerances. The operator is notified on the spot with tolerances are found to be high.
>
> The SPC records show no information entered for the months of April and June for the M82. Frank and Dan are both responsible for completing the Data Myte forms regularly to complete the SPC records. Both operators failed to complete the SPC records. Both operators failed to complete these forms regularly.
>
> Both Dan Young and Frank Diebert received corrective actions for their poor performance quality.

Later that day, Ms. Case, Mr. Fruth and Mr. Orville Rowe, another supervisor, met with the plaintiff to inform him that he was being terminated, as summarized by Ms. Case:

> Termination of Employment: Dan Young
>
> Present: Dan Young, Gene Furth, Orville Rowe, Kristina Case
>
> Kristina:
> Dan, we have problems with the M82 brass. Both you and Frank Diebert have run an excessive amount of scrap that was not screened out. Disciplinary action is necessary for these quality problems. Unfortunately, you are already on probation for the last quality problem on the M505 project. This quality problem is resulting in the termination of your employment with Galion LLC.
>
> Dan's response:
> It was a problem with the gages. Cheri Coy flipped my gage over and changed the setting. I said what are you doing? When she flipped it back over she had to move it back to where it was. I went through three different gages.
>
> Kristina:

>Dan you are responsible for checking the gage. You should be using your set check regularly.
>
>Dan:
>I do use my set check. I use it in the morning when I get here and then again after dinner.
>He (Carl) told me it wasn't my fault.
>I am running the two hardest jobs in the plant. What do you expect.
>This all started when I didn't call in. You know I am really sick when I call in. I don't know why you (Gene) didn't back me up.
>
>Gene escorted Dan out of the plant and checked his tool box. Dan told Gene "I am being railroaded, this is nothing but a witch hunt."

In the summary prepared by Mr. Fruth, he stated that plaintiff's termination was consequent to "Quality Bad on M82 Brass 340-010. Neglect on mastering gage and checking part's [sic] often enough."

The termination letter directed to plaintiff from Ms. Case on behalf of Galion, stated in pertinent part that the reason for his termination was:

>Your employment records indicate a continued problem with the quality of work. Therefore, we can no longer continue a working relationship. Your employment with Galion LLC is terminated effective 06/20/2007.

Mr. Frank Diebert, a 33-year-old Screw Machine Operator who worked with plaintiff at the time of plaintiff's termination, and who was mentioned in the foregoing summaries as also having contributed to quality problems with the M82 Brass, was not terminated at the same time as plaintiff, although "other corrective action" was taken against him. Six months after plaintiff's termination, on December 20, 2007, Mr. Diebert received a "Verbal Warning Record–Performance," for the following reasons:

>Unacceptable employee performance 12/03/2007
>M82 Brass was short in length and oversized on the 179 plug gage;
>A total of 12,000 suspect pieces that must be screened.

4

>Unacceptable employee performance 12/18/2007
>M –   Brass was out on the 250 dimension with the special plug gage;
>A total of 22,000 suspect pieces that must be screened.

Mr. Diebert was not discharged at that time.

On February 4, 2009, Mr. Diebert received a verbal warning for sub-par scrap production on the Band Trim.  He was ultimately terminated on May 7, 2009, at the age of 34[5], for performance problems.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a 90-day right to sue letter on August 4, 2009, after which he filed this action on October 22, 2009.

The defendant argues that summary judgment should be granted in light of the fact that the plaintiff was an employee at will who cannot establish a prima facie case of age discrimination, and that even assuming that plaintiff could establish a prima facie case, Galion has articulated a legitimate business reason for terminating plaintiff and plaintiff, in turn, has not met his burden of producing evidence of pretext.

In response, the plaintiff argues that there are genuine issues of material fact supporting his claim of age discrimination, based upon the fact that he and Mr. Diebert were disciplined differently, arguing that Mr. Diebert was treated more favorably, despite being "similarly situated." Plaintiff argues further that Galion's articulated reason for terminating him had no basis in fact and was pretextual.

The disposition of a motion for summary judgment is governed by Rule 56(c) of the

---

[5] Ms. Dena Glass, Galion Human Resources Manager, stated in her affidavit that Mr. Diebert was 34 at the time of his termination, whereas his age was stated as 35 in Galion's briefing, a distinction without a difference.

Federal Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues.  Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].

It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-moving party.  Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992);  Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992);  Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).[6]  The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law")

---

[6]While the court's reference to those rulings as representing a "new era" of "dramatic change" would no longer hold true twenty-one years later, the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

6

should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment; that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are "implausible." Id. at 1479-1480 (Footnotes and citations omitted.)

The seminal case on employment discrimination is McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), wherein the United States Supreme Court delineated a four part formula by which plaintiff can establish a prima facie case by showing, that he/she (1) was a member of a protected class, (2) was qualified for the position and performed it satisfactorily, (3) was discharged or suffered an adverse employment action, and (4) either that his/her position was filled by a non-member of the protected class or that he/she was treated less favorably than similarly-situated individuals. Id. at 802; see also, Johnson v. University of Cincinnati, 215 F.3d 561, 572-74 (6th Cir.), cert. denied, 121 S.Ct. 657 (2000); Allen v. Ohio Department of Rehabilitation and Correction, 128 F.Supp. 2d 483 (S.D.Ohio 2001). This test is also used by the Ohio courts when faced with alleged violations of Ohio's anti-discrimination statutes. Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992). Accord, Fenton v. HiSan, Inc., 174 F.3d 827, 829 (6th Cir. 1999).

Strict adherence to the McDonnell Douglas formula is not required when there is direct

evidence of discriminatory intent on the part of the defendant. Shah v. General Elec. Co., 816 F.2d 264 (6th Cir. 1987) (plaintiff established prima facie case of discrimination even though she was not replaced after her discharge where she presented other evidence of discriminatory motive); Mills v. Ford Motor Co., 800 F.2d 635, 639 (6th Cir. 1986) ("All the plaintiff must establish at the prima facie stage is that her discharge raised an inference of discrimination"); Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (female plaintiff established prima facie case when she showed that she was discharged for engaging in an affair with a man in the office who was not likewise discharged).

A claim of age discrimination under the ADEA requires proof of discriminatory motive and cannot survive if there is no evidence that the employment action taken was intended to treat a substantially younger employee more favorably than plaintiff. Woythal v. Tex-Tenn Corp., 112 F.3d 243, 246-47 (6th Cir. 1997). Accord, Leonard v. Twin Towers, unreported, Case No. 99-4221, 2001 U.S.App. LEXIS (6th Cir. 2001). The prima facie case parallels McDonnell Douglas, with the plaintiff being required to produce evidence that a substantially younger individual, not a member of the protected class, was treated more favorably as regards a particular employment action. Ibid.

In the present case plaintiff does not distinguish between direct and circumstantial evidence of discrimination, but this Court has found no direct evidence offered by plaintiff, so that in order for the plaintiff to succeed there would need to be proof from which a factfinder could infer an invidious intent to discriminate with regard to the challenged employment actions.

When a prima facie showing of discrimination is made there is a rebuttable presumption that the employer has engaged in impermissible discrimination. Texas Dep't of Community

Affairs v. Burdine, 450 U.S. 248, 254 (1981). At that point the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802; Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1214 (6th Cir. 1996).

Stated differently, that presumption may be rebutted by the production of evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, supra at 254). Once the employer has met the foregoing burden of production the presumption of discriminatory animus is no longer in effect.

If there is negation of the presumption of discriminatory animus the factfinder is back to square one, and must determine whether the challenged employment action was motivated by discriminatory animus, taking into consideration all evidence of record, including any evidence indicating that the reason articulated by the employer for the action was pretextual. A plaintiff may accomplish this either by showing that the proffered reason is unworthy of belief, or that the true reason for the his/her rejection, notwithstanding the proffered reason, was of a discriminatory nature. Goostree v. Tennessee, 796 F.2d 854 (6th Cir. 1986), cert. denied, 480 U.S. 918 (1987).

> "Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). In order to challenge the credibility of an employer's explanation, the plaintiff must show by a preponderance of the evidence: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse

> employment action. See Manzer, 29 F.3d at 1084 (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).

E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 834 (6th Cir. 1997). The plaintiff always retains the ultimate burden of persuasion. Ibid, citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987).

When the foregoing issues are raised upon motion for summary judgment the following applies:

> In the context of a summary judgment proceeding, [St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)] requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on [discrimination]. . ." Direct or indirect evidence of discriminatory motive may do but 'the evidence as a whole. . .must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by [discriminatory] animus.'". . .Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer.

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). (Citations and footnotes omitted.) Accord, Manzer v. Diamond Shamrock Chemicals Co., supra at 1083, n.3.

Although disbelief of the employer's proffered reason for employment actions together with the facts making up the prima facie case may suffice to show discrimination, "nothing in law would permit [a court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable." St. Mary's Honor Center v. Hicks, 509

U.S. 502, 514-15 (1993).

There is no dispute that as regards his termination the plaintiff can satisfy the first and third elements of the McDonnell Douglas formula as he is a member of the protected class (55 years old at the time of his termination), and he was terminated from employment, an obvious adverse employment action. As regards the second element, considering that he was disciplined and, ultimately, terminated for poor quality in his work performance, he was arguably not performing his work satisfactorily, so that he would not have met the second element.

That aside, the major flaw in plaintiff's case is his inability to provide any evidence of a nexus between his termination and any discriminatory motive. He made no protest to that effect to the defendant, and never mentioned it in conversations with a fellow employee with whom he had a close relationship. Plaintiff's deposition testimony was clear as regards the fact that he had no inkling that age bias purportedly entered into the decision to discipline/terminate him prior to meeting with an attorney subsequent to his termination. Both plaintiff and Mr. Diebert were disciplined for poor quality of work, and both men were ultimately terminated for poor work quality. Although Mr. Diebert was terminated subsequent to plaintiff, the timing of his termination has no bearing on the question of age discrimination. The critical distinction between the plaintiff and Mr. Diebert as of June 20, 2007 is that as of that date the plaintiff was in probationary status as a consequence of a "quality problem" the preceding month, and there is no evidence that this was the case with Mr. Diebert. The Court also cannot overlook the fact that the plaintiff had an attendance problem, and, again, there is no evidence that Mr. Diebert had that problem. The bottom line is that in arguing that he was treated less favorably than a similarly situated employee who was not a member of the protected class, the plaintiff has failed to provide sufficient evidence

that they were similarly situated yet treated differently, particularly in light of the fact that the identified employee was subjected to the same adverse employment actions, albeit not at the same time as plaintiff. There being no genuine issue of material fact as to the elements necessary to establish a prima facie case of age discrimination, summary judgment is warranted.

Even if this Court was to find that plaintiff had met his burden of establishing a prima facie case, the end result would not differ.

The defendant has met its burden of producing evidence of a non-discriminatory reason for terminating plaintiff by way of the evidence outlined previously herein of plaintiff's undisputed failure to meet quality standards for the work he performed.

The defendant having met its burden of producing evidence of a non-discriminatory reason for terminating plaintiff, the plaintiff must prove by a preponderance of the evidence that the defendant's reason for his termination is a pretext for age discrimination. In order to do so, plaintiff must establish by a preponderance of the evidence that the proffered reason had no basis in fact and did not actually motivate the decision to terminate him. In light of the fact that plaintiff does not dispute that the quality control standards were not met, there is no evidence that the proffered reason had no basis in fact. Although the plaintiff argues that the proffered reason did not actually motivate the decision to terminate him, as he believes to be reflected in the different disciplinary measures applied to him and to Mr. Diebert at the time of his termination, for the reasons articulated previously herein plaintiff has not provided sufficient evidence that the two were similarly situated or that any discriminatory motive was involved in his termination versus the discipline initially doled out to Mr. Diebert. In light of the fact that plaintiff has also failed to designate specific facts to demonstrate that the defendant's reason for terminating him is a pretext

for age discrimination, summary judgment on his age discrimination claim is warranted.

In light of all the foregoing, this Court is of the opinion that there are no genuine issues of material fact on the claims raised by plaintiff, and that defendant is entitled to judgment as a matter of law.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    September 17, 2010